E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
ANNE C. GANNON
Assistant United States Attorney
Chief, Santa Ana Branch Office
MELISSA S. RABBANI (Cal. Bar No. 283993)
CAITLIN J. CAMPBELL (Cal. Bar No. 324364)
Assistant United States Attorneys
    Ronald Reagan Federal Bldg & U.S. Courthouse
    411 West 4th Street, Suite 8000
    Santa Ana, California 92701
    Telephone: (714) 338-3499
    E-mail:   caitlin.campbell@usdoj.gov
               melissa.rabbani@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 23-35-MCS |
| Plaintiff, | GOVERNMENT'S TRIAL BRIEF |
| v. | Trial Date: July 23, 2024<br>Trial Time: 8:30 a.m. |
| JUAN LUIS MARTINEZ, | Location: Courtroom of the Hon.<br>Mark C. Scarsi |
| Defendant. | |

    Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Melissa Rabbani and Caitlin Campbell, hereby files its trial memorandum for the trial of defendant Juan Luis Martinez.

    The government respectfully reserves the right to file

//

//

additional memoranda as may become appropriate during the course of trial.

Dated: July 22, 2024              Respectfully submitted,

                                  E. MARTIN ESTRADA
                                  United States Attorney

                                  MACK E. JENKINS
                                  Assistant United States Attorney
                                  Chief, Criminal Division


                                  /s/ *Melissa S. Rabbani*
                                  MELISSA S. RABBANI
                                  CAITLIN J. CAMPBELL
                                  Assistant United States Attorneys

                                  Attorneys for Plaintiff
                                  UNITED STATES OF AMERICA

## I. STATUS OF THE CASE

Defendant Juan Luis Martinez ("defendant") is currently set for trial on July 23, 2024; trial by jury has not been waived. The parties estimate that trial will take two court days. Defendant is in custody pending trial.

The government expects to call seven witnesses in its case-in-chief: a cooperator, identified in prior filings as "J.D."; four law enforcement agents who witnessed various parts of the charged drug transactions; and two forensic chemists who tested the fentanyl and methamphetamine charged in this case. The government anticipates moving to designate each of the chemists as an expert in forensic chemistry and testing of narcotics; the government has already provided the requisite disclosures to the defense under Federal Rule of Criminal Procedure 16.

The government estimates the time of direct witness testimony as follows:

| Government Witness | Est. Time | Description of Testimony |
|---|---|---|
| "J.D." | 30 mins | "J.D." will testify regarding his cooperation with the government, his history of dealing narcotics with defendant, and the circumstances of the charged methamphetamine purchase, which J.D. arranged with defendant. J.D. is also expected to testify regarding his eyewitness account of the methamphetamine purchase. |
| Special Agent Matthew Klages | 20 mins | On October 28, 2021, SA Klages observed defendant deliver a bag, later found to contain over 19,000 |

| | | |
|---|---|---|
| | | fentanyl pills, to two women in a parking lot. |
| Detective Goro Yoshida | 20 mins | Detective Yoshida observed one of the women who received the bag of fentanyl pills from defendant deliver the bag to three men. |
| Deputy Francisco Mendoza | 20 mins | Deputy Mendoza conducted the traffic stop of the SUV driven by the three men and assisted in searching the car and recovering the bag of pills. |
| Sharareh Amini | 20 mins | Ms. Amini tested the fentanyl pills recovered on October 28, 2021. |
| Officer Nicholas Silver | 30 mins | On December 6, 2021, Officer Silver observed an undercover informant purchase methamphetamine from defendant. |
| Todd Davis | 20 mins | Mr. Davis tested the methamphetamine recovered on December 6, 2021. |

The defense has subpoenaed two law enforcement officers involved with this investigation: Task Force Officers Joe Chavez and Eddie Galvan. At present, the government is not aware of any other witnesses who may be called by the defense.

**II. THE INDICTMENT**

Defendant is charged in a three-count indictment with conspiracy to distribute fentanyl, distribution of fentanyl, and distribution of methamphetamine.

**III. STATEMENT OF CHARGES**

The parties have agreed to the following joint statement of the case for the Court to read to the jury:

The United States has charged defendant Juan Luis Martinez with conspiring to distribute fentanyl, distribution of fentanyl, and distribution of methamphetamine.

Specifically, the government alleges that defendant conspired with one or more individuals to knowingly and intentionally distribute at least 400 grams of fentanyl.

The government also alleges that on October 28, 2021, defendant knowingly and distributed over 19,000 fentanyl pills.

Finally, the government alleges that on December 6, 2021, defendant knowingly and intentionally distributed over 300 grams of methamphetamine.

Defendant denies the government's allegations and has entered a plea of not guilty.

**IV.  STATEMENT OF FACTS**

The government intends to prove the following facts at trial, among others:

On October 28, 2021, defendant met with two women in a parking lot in Bell, California.  Defendant gave one of the women a black bag containing thousands of fentanyl pills.  Later that day, the two women gave the bag of pills to three drug customers.  The bag contained approximately 19,882 pills, and together, the pills contained 2,199 grams of fentanyl.  Defendant knew that he was distributing fentanyl or some other federally controlled substance.

On December 6, 2021, defendant sold 304 grams of methamphetamine to another person who, unbeknownst to defendant, was a confidential source working with the Drug Enforcement Administration.  Defendant knew that he was distributing methamphetamine or some other federally controlled substance.

3

**V. CHARGED STATUTES AND ELEMENTS**

The violations charged in Counts One through Three of the Indictment, and the elements of those charges, are as follows:

**A. Count One**

Defendant is charged with conspiracy to distribute at least 400 grams of fentanyl, in violation of Title 21, United States Code, Section 846. The government must prove:

(1) Beginning on an unknown date, and ending on or about October 28, 2021, there was an agreement between two or more persons to distribute fentanyl; and

(2) Defendant joined in the agreement knowing of its purpose and intending to help accomplish that purpose.

If the jury finds defendant guilty on Count One, the jury must, for sentencing purposes, determine whether determine whether the government proved beyond a reasonable doubt that the amount of fentanyl that defendant conspired to distribute equaled or exceeded 400 grams.

**B. Count Two**

Defendant is charged with distribution of fentanyl, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(A)(vi). The government must prove:

(1) Defendant knowingly distributed fentanyl; and

(2) Defendant knew that it was fentanyl or some other federally controlled substance.

If the jury finds defendant guilty on Count Two, the jury must, for sentencing purposes, determine whether the government proved beyond a reasonable doubt that the amount of fentanyl that defendant distributed equaled or exceeded 400 grams.

4

**C. Count Three**

Defendant is charged with distribution of methamphetamine, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(A)(viii). The government must prove:

(1) Defendant knowingly distributed methamphetamine; and

(2) Defendant knew that it was methamphetamine or some other federally controlled substance.

If the jury finds defendant guilty on Count Three, the jury must, for sentencing purposes, determine whether the government proved beyond a reasonable doubt that the amount of methamphetamine that defendant distributed equaled or exceeded 50 grams.

**VI. LEGAL AND EVIDENTIARY ISSUES**

**A. Exhibits**

The government has only a handful of exhibits: six photographs taken in connection with the fentanyl seizure on October 28, 2021; two photographs taken during the methamphetamine transaction on December 6, 2021; three photographs taken during a search warrant execution at defendant's home on December 16, 2021; and the actual fentanyl and methamphetamine recovered and charged in this case. The government does not intend to introduce the search-warrant photographs unless the defense raises the topic of the search warrant execution.

Defendant objected to one of the photographs from the methamphetamine transaction because it was produced after the discovery cut-off in this case. However, at the pre-trial conference on July 15, 2024, this Court ruled that the photograph could be admitted. The government does not anticipate significant evidentiary issues in admitting these exhibits.

The government is not aware of any exhibits the defense may seek to introduce at trial.

**B.   Scope of J.D.'s Testimony**

The parties have already raised one evidentiary dispute with the Court: whether "J.D.," the cooperator who arranged and attended the methamphetamine transaction, may testify regarding his past history of trafficking drugs with defendant. The government filed a motion <u>in limine</u> to admit that evidence, and the defense opposed it. At the pre-trial conference on July 15, 2024, the Court granted the government's motion <u>in limine</u> but suggested that a limiting instruction would be appropriate.

On July 18, 2024, the government proposed the following instruction, modeled after Ninth Circuit Model Criminal Jury Instruction 3.3:

<u>You have heard evidence that the defendant engaged in other drug transactions not charged here. You may consider this evidence only for its bearing, if any, on the question of the defendant's intent, knowledge, absence of mistake, and lack of accident and for no other purpose. You may not consider this evidence as evidence of guilt of the crimes for which the defendant is now on trial.</u>

Defense counsel responded that he objects to any such instruction being given because "there is simply no way for the prejudice to be corrected."

**C.   Body-Worn Camera Footage**

Los Angeles Sheriff's Department Deputy Francisco Mendoza is expected to testify that on October 28, 2021, he and a partner pulled over a black SUV driven by three men and recovered a black bag containing a woman's bra stuffed with over 19,000 pills.

6

When the government initially charged this case, law enforcement agents were told that no body-worn camera footage of that traffic stop existed.

However, during a pre-trial meeting on July 16, 2024, Deputy Mendoza stated that he thought there was body-worn camera footage from the traffic stop. Task Force Officer Joe Chavez reached out to the Sheriff's Department to determine whether such footage exists, and on July 18, 2024, learned that there is such footage. The government's understanding is that the LASD deputies were outfitted with body-worn cameras only a few days before the October 28 traffic stop, which may explain the incorrect information received at the beginning of this case.

The government has served a subpoena on the Sheriff's Department for any available body-worn camera footage and continues to follow up on that subpoena. The government will produce any footage received to the defense as soon as it is available.

The government does not intend to use the body-worn camera footage at trial, but would not object to the defense doing so.

**D. Cooperator Text Messages**

During trial preparation, the government learned that around the time of the October 28, 2021 fentanyl transaction and December 6, 2021 methamphetamine transaction, Task Force Officer Chavez and "J.D." occasionally exchanged text messages. However, TFO Chavez lost those text messages when he received a new work cell phone and cannot recover them. J.D. does not currently have access to a phone with those text messages.

Both TFO Chavez and J.D. remember that the text messages were infrequent and logistical in nature; both have stated that they

7

generally only texted to set a time and/or place to speak by telephone or in person.

The government disclosed this information to the defense and is not aware whether the defense intends to seek any relief.

**E.   Defense Witnesses**

The government is aware of only two witnesses the defense may call at trial: DEA Task Force Officers Joe Chavez and Eddie Galvan.

The government is not aware of any testimony TFO Chavez or TFO Galvan would have regarding the charged drug transactions that is not cumulative.

The government notes that TFO Chavez and TFO Galvan have each authored several written reports relating to this case.  The government would object to any attempt to introduce those written reports into evidence, or to any attempt to call TFO Chavez or TFO Galvan solely to impeach him by pointing out purported inaccuracies in any written report.  The government is not relying on any written report, or on TFO Chavez's or TFO Galvan's testimony, impressions, or recollections, in this case, and any such testimony would be irrelevant.  See Fed. R. Evid. 401 ("Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action.").

Finally, the government notes that TFO Chavez is expected to sit with government counsel throughout the trial; the government would object to any motion to exclude TFO Chavez from trial under Federal Rule of Evidence 615.  See Notes of Committee on the Judiciary, Senate Report No. 93-1277 ("Many district courts permit government counsel to have an investigative agent at counsel table

8

throughout the trial although the agent is or may be a witness.").